### DEITZ v. UNITED STATES.
### No. 2690.

District Court, S. D. West Virginia.
Dec. 12, 1933.

Price, Smith & Spilman, E. J. Goodrich, and Frederick L. Thomas, all of Charleston, W. Va., for petitioner.

Okey P. Keadle, Asst. U. S. Atty., of Huntington, W. Va., and J. W. Hussey, of the Department of Justice, of Washington, D. C., for the United States.

McCLINTIC, District Judge.

Petitioner, T. A. Deitz, on the 30th day of January, 1930, filed his petition, alleging his citizenship and residence to be in Charleston, Kanawha county, W. Va.; that his claim was for the recovery and refunding of certain income taxes, amounting to $5,568.99, which he claimed were improperly and illegally assessed against and collected from him in excess of his true and correct liability for the year 1920, and in addition claimed interest on such sum; that he had filed a correct return on or about the 14th day of April, 1921, and paid in full the correct amount of taxes due on his income for 1920; that the Commissioner of Internal Revenue, on the 13th day of April, 1926, made an additional assessment of the amount claimed by petitioner, as set out above, and he paid that sum under protest on the 29th day of July, 1926; that petitioner filed his claim for a refund thereof, which claim was rejected; that no part of said sum has been repaid; that petitioner is the sole owner of said claim; that he has at all times borne true allegiance to the government of the United States in every way; and that this action was instituted within five years after the payment of the moneys herein sought to be recovered. The respondent demurred to petitioner's petition and the demurrer being overruled, respondent pleaded the general issue.

The additional assessment sought to be recovered, resulted from the inclusion in petitioner's taxable income, for the year 1920, of the sum of $20,000 claimed by respondent to have been received by petitioner as a cash dividend from Lake & Export Coal Corporation, a West Virginia corporation, the circumstances being as follows:

Deitz, at some date prior to the 1st day of April, 1920, had subscribed and paid for 100 shares of the capital stock of said Lake & Export Coal Corporation, of the par value of $100 per share. This company was engaged in the coal sales business. According to the testimony, it was doing a very large business for its small capital. To those of us who remember the hectic year 1920, when the prices of coal went beyond all reason, up to the latter part of November, 1920, when the inevitable crash came, it is easy to grasp

the fact that capital and credit were needed for the business that this company was doing.

Witness Hyman graphically described this business and the amount thereof, and likewise the sad ending of this "Mississippi bubble."

On the 1st day of April, 1920, or at some time near that, a stock dividend was declared in the amount of $200,000 thus increasing the capital stock to a gross amount of $300,000. There were filed as exhibits Nos. 1 to 5, inclusive, with the evidence of witness Hyman, certain alleged copies of the minutes of the stockholders' and directors' meetings of the company. Most of the resolutions of these minutes relate to the question of salaries or compensation of the officers and employees of the company; but one, that is, a meeting of the board of directors, purported to authorize this stock dividend and a certificate for 200 shares was sent to petitioner Deitz. Later, he gave his daughter, Eva Deitz Sydnor, 165 shares of this stock, and to her husband, witness L. W. Sydnor, 120 shares thereof, and only retained 15 shares for himself. Witness Hyman, treasurer of the company, employed a claimed expert from some tax division in Washington to advise and write up the books of the company. According to the testimony, this expert had no difficulty in getting three different, full, and complete statements from the books, each of which could be justified by the entries on the books.

It is conclusively shown by the evidence that while certain checks were written (including one for $20,000, to petitioner Deitz), it was never intended that they should be delivered or paid, and none of them were ever actually in good faith delivered. A check to Deitz was sent to him by witness and Treasurer Hyman solely for the purpose of having the same indorsed by petitioner with specific instructions that if Deitz should refuse to indorse the check, it was to be returned to Hyman without indorsement. This method was somebody's idea of declaring a stock dividend. It seems that after the declaration of the stock dividend, the transaction was set up on the books of the company by crediting each stockholder's account with his respective amount thereof. In order to balance these accounts, some one conceived the idea of having checks of the company written in the respective amounts of the credits so made, requiring the checks to be indorsed and returned to the company. The sham was carried further by putting these "make-believe" checks through the bank in some way so as to show the same on these three-way books.

Certain facts stand out clearly: (1) The Lake & Export Coal Corporation never paid a cash dividend to any of its stockholders during its existence; (2) the transaction involving the issuance of the check in plaintiff's name was merely a poor bookkeeping method of consummating the issuance of a stock dividend; and (3) plaintiff Deitz never got a red cent from the company as a cash dividend or in any other form, and in addition lost the $10,000 he originally invested in the stock of the concern.

From the evidence, I have found the following facts, to wit:

First. The allegations in petitioner's petition filed herein have been proven and are true.

Second. That the petitioner is a resident of the city of Charleston, Kanawha county, W. Va., a citizen of said state and of the United States, and has at all times borne true allegiance to the government of the United States, and has not in any way voluntarily abetted, aided, or given encouragement to rebellion against the said government.

Third. That said petitioner paid to the collector of internal revenue at Parkersburg on July 29, 1926, an additional assessment of income tax assessed against him for the year 1920 in the amount of $5,459.79, and interest thereon amounting to $109.20 making a total payment of $5,568.99; that said payment was made under protest, and a claim for refund therefor filed by petitioner at the time of payment, which claim for refund was rejected by the Commissioner of Internal Revenue on the 18th day of September, 1926; that said claim for refund is in proper form, filed within the proper time, and this suit brought to recover said payment within five years from the date the same was made, and all other steps in connection with said payment, necessary to enable petitioner to bring suit for the recovery thereof, were duly and regularly taken and had in conformity with the laws, rules, and regulations governing the same.

Fourth. That said additional assessment of income tax, so paid by petitioner, was determined by the Commissioner of Internal Revenue of the United States because of his inclusion, in petitioner's taxable income for the year 1920, of the sum of $20,000 alleged to have been received by petitioner as a cash dividend from the Lake & Export Coal Corporation, a corporation organized and then doing business under the laws of the state of West Virginia.

Fifth. That petitioner did not receive a cash dividend from the said Lake & Export Coal Corporation in the amount of $20,000,

nor in any other amount, during the year 1920, and did not receive from said corporation any other taxable income or other thing of value upon which said additional assessment of income tax sought to be recovered in this cause could have been made, and the amount so paid by petitioner and herein sought to be recovered was erroneously assessed by said Commissioner of Internal Revenue against the petitioner, and erroneously collected from him.

My conclusion of law from the foregoing finding of facts is that petitioner is entitled to judgment for the amount stated above, $5,-568.99, with interest at the rate of 6 per cent. per annum from July 29, 1926, until paid, according to law. I find that the evidence of Deitz, Hyman, and Sydnor is admissible to prove what actually took place, and that the alleged minutes and books are very materially, if not entirely, discredited.